UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BOBBIE BOWEN,

        Plaintiff,

  v.

                                        Case No. 23-cv-64-pp

CO WALKER and CO GONZALEZ,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 22)**

On April 25, 2024, the plaintiff filed a motion to appoint counsel. Dkt. No. 22. In the motion and the attached exhibits, the plaintiff demonstrates that he has made a reasonable attempt to obtain counsel on his own and that he is not capable of litigating this case given its difficulty. The court will grant the plaintiff's motion. Dkt. No. 22.

## I.    Background

### A.    Screening the Complaint

On January 17, 2023, the plaintiff—representing himself—filed a complaint alleging that correctional officers (COs) with the Milwaukee County Jail violated his rights. Dkt. No. 1. The plaintiff stated that sometime between January 17 and February 3, 2020, he was housed in the Milwaukee County Jail's mental health unit. Id. at ¶1. The plaintiff alleged that while he was there, at least five correctional officers brought another incarcerated person

1

into the shower room next to the plaintiff's cell. Id. Allegedly, the other incarcerated person was strapped to a chair covered in feces and the correctional officers were trying to get the feces off that person. Id. The plaintiff alleges that the water from the shower—contaminated with feces—started running into his cell. Id. The plaintiff asserts that he could not stop the water from coming under his cell door because he was not allowed to have sheets, blankets or clothes. Id. at ¶10.

The plaintiff claims that he told the COs that contaminated water was flooding his cell and insisted they stop. Id. at ¶2. The plaintiff alleges that one CO, with the name "Walker" on the back of his helmet, "retaliate[d]" against the plaintiff by "putting his gloved hand & body" on the plaintiff's cell door, knowing that he had feces on his body and glove. Id. at ¶4. The plaintiff stated that he and Walker began "having Word(s)" and the plaintiff asked Walker what the plaintiff had done to make Walker put feces on his door. Id. at ¶5. The plaintiff observed another CO recording this incident and explained that this incident occurred during the COVID pandemic. Id. at ¶6.

The plaintiff says that he was left locked in the contaminated cell for days. Id. at ¶9. The plaintiff claims that following the incident, he asked CO Gonzalez to help him by calling someone to clean up the plaintiff's cell or by letting him clean his own cell. Id. at ¶15. The plaintiff alleges that, despite these requests, Gonzalez did not provide the plaintiff any help, so the plaintiff's cell remained unclean and unsanitary for days. Id. at ¶14. Based on continued exposure to the contaminated water, the plaintiff demanded damages for "pain,

2

sinus issues, embarrassment, mental health issues, couldn't sleep for smell of feces or eat for day(s) because of feces" and "some type of rash dev on [his] butt days latter [sic]." Id. at ¶6.

On June 19, 2023, the court issued a screening order allowing the plaintiff to proceed with a claim under 42 U.S.C. §1983. Dkt. No. 6. For screening purposes, the court assumed that the plaintiff was a pretrial detainee while he was housed in the mental health unit. Id. at 5. The court explained that the plaintiff's allegations raised a conditions-of-confinement claim, which is governed by the Due Process Clause of the Fourteenth Amendment for a pretrial detainee. Id. The court then "appl[ied] the Eighth Amendment standard to all the plaintiff's allegations, because the Seventh Circuit has held that 'anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment.'" Id. (quoting Lewis v. Downey, 581 F.3d 467, 475 (7th Cir. 2009)). The court explained that "[a] plaintiff has a right to live in an environment that is free of accumulated human waste" and that "[t]he unreasonableness of the plaintiff's conditions of confinement depends on the severity and duration of his exposure to the conditions. Id. at 6 (citing Hardeman v. Curran, 933 F.3d 816, 823 (7th Cir. 2019)).

After laying this legal framework, the court summarized the plaintiff's allegations as follows:

> Construing the allegations in the light most favorable to the plaintiff, the plaintiff has claimed that his cell flooded with contaminated water and remained in that condition for more than one day, that Walker and Gonzalez heard—and ignored—the plaintiff's requests for assistance and that the plaintiff suffered physical injuries because of the contamination.

3

Id. at 6-7. Based on these allegations, the court allowed the plaintiff to proceed with a §1983 conditions-of-confinement claim against COs Walker and Gonzalez. Id. at 5-7. The court also ordered the U.S. Marshals Service to serve a copy of the complaint and the screening order on the defendants" hereafter. Id. at 7-8.

      B.      <u>The Plaintiff Retained Counsel for Limited Purpose</u>

Following the court's screening order, the Marshals Service experienced some delays in serving the defendants. Dkt. Nos. 7-9. But on December 27, 2023, the defendants filed their answer. Dkt. No. 13. The court set a scheduling conference for April 15, 2024. Dkt. No. 14.

On March 27, 2024, Attorney Annalisa Pusick filed a "notice of limited appearance" on behalf of the plaintiff. Dkt. No. 15. The same day, Attorney Pusick filed a letter with the court clarifying that her representation was limited to settlement efforts only and that "the scope of [her] representation w[ould] terminate regardless of whether a settlement ha[d] been achieved." Dkt. No. 16. Attorney Pusick asked the court to "stay a scheduling order and instead order mediation for the parties." Id. The next day, the defendants filed a letter opposing the plaintiff's request for court-ordered mediation. Dkt. No. 17.

The court proceeded with the scheduling conference on April 15, 2024. Dkt. No. 21. The court explained that it was not in the habit of ordering parties to mediate, especially when the parties had not yet exchanged even their initial discovery disclosures. Id. at 1. The court stated that it was more than happy to refer any case for mediation, but only if all parties were in agreement. Id.

4

Attorney Pusick informed the court that the parties had not agreed to participate in mediation. Id. Attorney Pusick explained that she would be filing a notice to withdraw, and that the plaintiff understood that he would no longer have representation. Id. The following day, Attorney Pusick filed a notice of withdrawal and the court terminated her as counsel. Dkt. No. 20.

       C.      Motion to Appoint Counsel (Dkt. No. 22)[1]

On April 25, 2024, the court received from the plaintiff a motion to appoint counsel. Dkt. No. 22. This handwritten motion discussed a variety of topics. Id. The plaintiff began by stating "Im in imminent danger, Appointment of Counsel is necessary to file a Supplemental report in Case no 23-CV-64," id. at ¶1, before discussing the plaintiff's dissatisfaction with some of his criminal cases,[2] id. at ¶¶1-5. When the plaintiff returned his attention to the instant case, the plaintiff exclaimed "This Case is to Complex for me!!!" Id. at ¶6.

In discussing his mental health, the plaintiff claimed, "my Mental Health is at Grave risk & ive been reporting to all Judge(s) about my Mental Health for year(s)." Id. at ¶7. The plaintiff continued:

> Im in imminent danger of being locked up for crime(s) i did not Commit. My Mental Health is in imminent danger. Im having flashback(s) of being in the Cell with fecess. Im having deep Conversations(s) with myself, On & off my med(s) Halluctination(s)

---

[1] This section contains several quotes from the plaintiff's handwritten motion to appoint counsel. Dkt. No. 22. To the best of the court's ability, it transcribed the quoted language verbatim.

[2] Throughout the plaintiff's motion he references several cases not before this court, with a primary focus on "2020-CF-312." Dkt. No. 22 at ¶¶1-5, 8, 10, 18, 21-26, 28-30. This federal court can appoint counsel to assist the plaintiff only with this case, Case No. 23-cv-64-pp, not any of the other cases the plaintiff mentioned in his motion.

5

of seeing thing(s) Crawling on me. Suicide past thought(s), Scared to Speak out because i dont think nobody will believe me but it(s) all on Video Body Cam that i seen with i own to eye(s). See Estate of Cole by Pardue v. Fromm, 94 F.3d 254 (7th Cir. 1996); Gregoire v. Class, 236 F.3d 413 (8th Cir. 2000);

Id. at ¶9. The plaintiff explained how his mental health concerns would affect his ability to represent himself:

I cant conduct a Jury trial not with the Med(s) im on. I Cant Conduct a Jury trial with a bad back & un-focus brain. I have to document stuff like Judge Roa said for i can bring stuff back to my Remember. I'll end up getting paranoid in the middle of trail from fear of what guard(s) or police might do to me.

Id. at ¶12. The plaintiff said that he has a brain injury and that he is "not Competent enough to handle this Case[.]" Id. at ¶¶13-14.

The plaintiff stated, "I hoped to just Settle this matter . . . With Attorney Annalis Pusick See Case 23-CV-64 at Document 16 and 17 . . . With no Relief." Id. at ¶16. The plaintiff asserted that he "looked for Counsel to help leitigate this case with no relief . . . See(Ex#2p1-4)[,]" and inquired, "Honorable Pamela Pepper Can you be my Attorney in this Claim???" Id. at ¶¶18, 20.

The plaintiff said, "These Case(s) have a high risk of me relapsing." Id. at ¶25. The plaintiff continued:

Relapse(s) Such as not wanting to take my med(s). Back Flashe(s) of going to prison again. Cant focus, Cant sleep, Cant Eat, Wanting to overly Medicate for i stay sleep . . . Appointment of Counsel is needed for i can keep a Clear Head in Case trial happen(s) . . . Thinking about my Bail money i lost . . . Suicide. Using my Thinking figure(s) <u>Backed Up</u> by the U.S. Department of Justice National Institute of Corrections Thikning for a Change integrated Cognitive Behavior Change Program See (Ex6 p1of1)

Id. at ¶27. The plaintiff also stated, "Relapsing . . . I don't want to eat no Ramen Noodles in Prison or Jail Appointment of Counsel is necessary im

6

Serious . . . See(Ex#7)."³ Id. at ¶30 (citing Dkt. No. 22-1 at 10). Near the end of the motion, the plaintiff concluded:

> The Human Relation(s) program & Thinking For A change Program(s) are really good Program(s) . . . Appointment of Counsel are really Good program(s) Appointment of Counsel is needed for i dont relapse & loose my (skill(s)) that the program(s) put in me. Again Honorable Pepper sence they dont want to Settle this Case up your GAVEL on them for making in harder than needed to be & lying to the Community & the Court(s) . . . Counsel is needed to protect my Due Process Right(s) Period . . . Toget to the bottom of this Case(s).

Id. at ¶32.

The plaintiff attached several exhibits to his motion. Dkt. No. 22-1. He filed four letters from law firms declining to accept his case. Id. at 1-4. One of these letters, dated July 31, 2023, came from Attorney Pusick's law firm. Id. at 4. The plaintiff's other exhibits include a letter regarding one of the plaintiff's criminal cases, a police report, a letter from Behavioral Consultants Inc. stating that they received a court order to perform a psychological evaluation of the plaintiff, a certificate of completion for the Thinking for a Change program, what appears to be a "Maruchan Ramen Noodle Soup" package that the plaintiff scanned, a letter regarding another one of the plaintiff's cases and what appears to be newspaper ad page for lawn mowers. Id. at 5-12.

## II. Legal Standard

In federal civil litigation, a litigant has "no right to recruitment of counsel." Dewitt v. Corizon, Inc., 760 F.3d 654, 657 (7th Cir. 2014). However,

---

³ The "Exhibit 7" that the plaintiff cited appears to be a "Maruchan Ramen Noodle Soup" package that the plaintiff scanned. Dkt. No. 22-1 at 10.

the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1). In exercising its discretion, the court must make the following inquiries: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" Pruitt v. Mote, 503 F.3d 647, 654 (7th Cir. 2007).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) "The court usually requires a petitioner to show that he has contacted at least three lawyers to establish that he made a reasonable attempt to hire counsel on his own." Devroy v. Boughton, Case No. 22-cv-727-pp, 2023 WL 4059112, at *4 (E.D. Wis. June 19, 2023). The court also "typically requires [a plaintiff to] submit[] letters from several attorneys declining assistance and copies any documents that show Plaintiff tried to find an attorney." Astramsky v. Geisler, Case No. 23-2146, 2023 WL 7300534, at *2 (C.D. Ill. Nov. 6, 2023) (citing Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

If a plaintiff satisfies the first inquiry, the court then must determine "whether the difficulty of the case—factually and legally—exceeds the plaintiff's capacity as a lay person to coherently present it." Pruitt, 507 F.3d at 654-55.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). "The question is not whether the *pro se* litigant would be as effective as a lawyer, but rather whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations, and any other characteristics that may limit the plaintiff's ability to litigate the case." Id.

### III. Analysis

Starting with the first prong, the court concludes that the plaintiff has made a good faith effort to hire counsel on his own. Along with his motion, the plaintiff filed four letters from law firms who declined to represent him. Dkt. No. 22-1 at 1-4. The earliest letter is dated February 20, 2023—about one month after the plaintiff filed his complaint—and the latest is dated July 31, 2023—about one month after the court issued its screening order. See Dkt. Nos. 1, 6, 22-1 at 1 & 4. The latest denial letter came from Attorney Pusick's

9

law firm, Cade Law Group. Dkt. No. 22-1 at 4. Because Attorney Pusick would later file a "notice of limited appearance" and appear on the plaintiff's behalf at the scheduling conference, dkt. nos. 15, 21, the court assumes that the plaintiff had additional conversations with Cade Law Group. Based on these letters and the fact that the plaintiff did obtain an attorney on a limited basis for a short time, the court determines that he made a reasonable attempt to obtain counsel.

As to the second prong, it is apparent from the plaintiff's motion that this case exceeds his capacity to coherently present it. The motion is replete with statements about the plaintiff's mental health challenges and the effect these challenges may have on his ability to present this case. The motion is structured in a stream-of-consciousness style that the court found difficult to track at times. Throughout the motion, the plaintiff wandered into topics this court has no authority to address, such as his criminal cases. The plaintiff filed exhibits, including a ramen noodle packet and a newspaper ad for lawn mowers, which are not relevant to the legal issues in the plaintiff's case. Dkt. No. 22-1 at 10, 12. It appears the plaintiff is capable of properly researching and citing case law because he appropriately cited several legal authorities in his motion. This alone, however, does not mean that the plaintiff could coherently present this case given the court's other concerns about the plaintiff's mental health challenges and his method of communicating. The court finds that the plaintiff is not competent to litigate this case himself.

The court will grant the plaintiff's motion to appoint counsel, with a few clarifications. First, Chief Judge Pamela Pepper cannot represent the plaintiff. Judges must remain impartial—in other words, neutral—in every case before them. A judge cannot take sides and cannot represent one party or the other. Second, the court will work to recruit a volunteer attorney for the plaintiff, starting with posting a description of the plaintiff's case on a webpage designed for recruiting volunteer counsel. The plaintiff should be aware that the recruitment process may take some time; the court cannot predict how long it may take for an attorney to volunteer to take the plaintiff's case. Finally, the volunteer attorney will be able to represent the plaintiff and give the plaintiff legal advice relating only to *this* case before *this* court—Case No. 23-cv-64-pp. The court does not have authority to appoint the plaintiff an attorney for any other cases referenced in his motion. With these clarifications, the court will begin the process of recruiting volunteer counsel to assist the plaintiff with this case. When an attorney has been recruited, the court will notify the plaintiff and forward him the required paperwork.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion to appoint counsel. Dkt. No. 22. The court will begin the process to recruit counsel for the plaintiff.

Dated in Milwaukee, Wisconsin this 4th day of June, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**